**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-2375**

———————

MELANIE PITROLO,

Plaintiff – Appellant,

v.

COUNTY OF BUNCOMBE, NC; BRITT LOVIN; DEAN KAHL; LOYD KIRK;
VONNA CLONINGER; WESTERN NORTH CAROLINA REGIONAL AIR QUALITY
AGENCY BOARD OF DIRECTORS; WESTERN NORTH CAROLINA REGIONAL
AIR QUALITY AGENCY,

Defendants - Appellees.

———————

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.  Martin K. Reidinger,
District Judge.  (1:06-cv-00199-MR-DLH)

———————

Submitted:  September 12, 2014        Decided:  October 20, 2014

———————

Before SHEDD and THACKER, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

———————

Dismissed in part and affirmed in part by unpublished per curiam
opinion.

———————

Michael G. Wimer, WIMER & ASSOCIATES, PC, Asheville, North
Carolina, for Appellant.  Thomas J. Doughton, Amy L. Rich,
DOUGHTON RICH BLANCATO PLLC, Winston-Salem, North Carolina, for
Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this, Melanie Pitrolo's ("Appellant") third appeal, we are faced with multiple assignments of error. Following a favorable verdict on her Title VII gender discrimination claim, Appellant moved the district court for attorney's fees, costs, and declaratory relief, all of which the district court denied. Soon afterward, Appellant filed a motion demanding the district court judge recuse himself. One month later, she filed a motion to vacate all orders the district court judge had entered while he was allegedly disqualified. While these motions were pending, Appellant filed her Third Notice of Appeal.[1] Appellant then submitted a supplemental motion to vacate, alleging the district court relied upon confidential information obtained during settlement mediation in its order denying attorney's fees. After the district court denied Appellant's motions for recusal and vacatur, Appellant filed an Amended Third Notice of Appeal.

Appellant claims the district court abused its discretion both when it denied her post-trial motion for declaratory relief and attorney's fees, and her motions for

---

[1] We considered the issues presented in Appellant's First Notice of Appeal in Pitrolo v. Cnty. of Buncombe, N.C., No. 07-2145, 2009 WL 1010634 (4th Cir. Mar. 11, 2009), and her Second Notice of Appeal in Pitrolo v. Cnty. of Buncombe, N.C., 407 Fed. App'x 657 (4th Cir. 2011).

2

recusal and vacatur. Because we lack appellate jurisdiction to review the district court's denial of Appellant's motions for recusal and vacatur, we dismiss those assignments of error. We affirm the district court's denial of Appellant's motion for attorney's fees and declaratory relief, albeit on different grounds than those upon which the district court relied. MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th. Cir. 2002) ("[W]e are entitled to affirm the court's judgment on alternate grounds, if such grounds are apparent from the record."). Applying the factors set forth in Aetna Casualty & Surety Co. v. Ind-Com Electric Co., 139 F.3d 419, 421-23 (4th Cir. 1998) (per curiam), we conclude that Appellant is not entitled to declaratory relief because the judgment she sought would neither clarify any issue of law in which the forum state or the federal government has an interest, nor provide relief from uncertainty giving rise to the proceedings. Finally, we affirm the district court's denial of attorney's fees, because the factors set forth in Mercer v. Duke University, 401 F.3d 199, 204-09 (4th Cir. 2005), militate against a fee award in this case.

I.

The facts underlying this appeal have been well articulated by the district court. See Pitrolo v. Cnty. of Buncombe, N.C., No. 1:06-cv-00199, 2012 WL 4511173, at *1-2

3

(W.D.N.C. Oct. 1, 2012) ("October 1, 2012 Order") (J.A.[2] 155-59). Therefore, we recite the facts again here only to the extent they are relevant to the instant appeal.

A.

On May 26, 2006, Appellant filed suit in the Superior Court of Buncombe County, North Carolina pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, against the County of Buncombe, North Carolina; the Western North Carolina Regional Air Quality Agency ("the Agency"); the Agency's Board of Directors, and members of the Board in their individual capacities (collectively, "Appellees"). Appellant claimed the Agency violated 42 U.S.C. § 2000e-2(m) when it considered her gender as a motivating factor in its decision to deny her a promotion to Interim Director of the Board.[3] In her prayer for relief, Appellant requested "actual damages, liquidated damages, and punitive damages, together with the costs of the litigation, including reasonable attorney's fees and expenses," and "all

---

[2] Citations to the "J.A." and the "Supp. J.A." refer to the Joint Appendix and Supplemental Joint Appendix filed by the parties in this appeal.

[3] Appellant also claimed Appellees retaliated against her in violation of Title VII; abridged her right to free speech in violation of 42 U.S.C. § 1983 and the federal and North Carolina Constitution; violated the Equal Pay Act, 29 U.S.C. § 206; committed slander per se; and breached an implied contract with Appellant. See Supp. J.A. 8-15.

other relief, whether legal or equitable, to which she may be entitled." Supp. J.A. at 15. However, Appellant did not make any legal or factual argument in support of declaratory relief either before or during trial. Appellees removed the case to the District Court for the Western District of North Carolina on June 22, 2006.

On March 7, 2007, Appellees moved for summary judgment as to all of Appellant's claims. Defs.' Mot. for Summ. J., Pitrolo v. Cnty. of Buncombe, N.C., No. 1:06-cv-00199 (W.D.N.C. June 22, 2006; filed Mar. 7, 2007), ECF No. 19. The district court granted summary judgment on October 10, 2007, dismissing Appellant's entire case. The district court dismissed Appellant's gender discrimination claim in particular because it concluded the principal evidence supporting this claim was inadmissible hearsay, and Appellant offered no other direct or circumstantial evidence of gender discrimination. Mem. & Order at 14-16, Pitrolo v. Cnty. of Buncombe N.C., No. 1:06-cv-00199 (W.D.N.C. June 22, 2006; filed Oct. 10, 2007), ECF No. 47. Appellant appealed the order granting summary judgment to this court, but only to the extent that it dismissed her gender discrimination and retaliation claims. On March 11, 2009, we vacated the district court's order of summary judgment as to Appellant's gender discrimination claim and remanded for trial, but affirmed the district court's grant of summary judgment on

5

Appellant's retaliation claim. See Pitrolo v. Cnty. of Buncombe, N.C., No. 07-2145, 2009 WL 1010634, at *4 (4th Cir. Mar. 11, 2009) ("Pitrolo I").

Following trial on July 22, 2009, the jury returned a verdict finding Appellees unlawfully considered Appellant's gender as a motivating factor in the decision not to promote her, but Appellees would have denied Appellant the promotion notwithstanding her gender. Jury Verdict, Pitrolo v. Cnty. of Buncombe, No. 1:06-cv-00199 (W.D.N.C. June 22, 2006; filed July 22, 2009), ECF No. 82. Therefore, Appellant was not awarded any damages.

On August 7, 2009, Appellant moved for attorney's fees and declaratory relief, specifically, a declaration that Appellees discriminated against her in violation of Title VII, and to have this declaration placed in her personnel file. Rather than rule on this motion, the district court entered judgment as a matter of law in favor of Appellees, notwithstanding the jury's verdict. Am. J. at 1-2, Pitrolo v. Cnty. of Buncombe, N.C., No. 1:06-cv-00199 (W.D.N.C. June 22, 2006; filed Aug. 20, 2009), ECF No. 95. Appellant successfully appealed that judgment to this court, and we held that as the prevailing party, Appellant may "seek declaratory relief, injunctive relief, and attorney's fees and costs demonstrated to be directly attributable to her mixed-motive [Title VII] claim."

6

Pitrolo v. Cnty. of Buncombe, N.C., 407 Fed. App'x 657, 659 (4th Cir. 2011) ("Pitrolo II") (internal quotation marks omitted). In Pitrolo II, we did not, however, consider whether the district court should grant such relief.

B.

On September 15, 2009, this case was reassigned to district court Judge Reidinger upon Judge Thornburg's retirement. After requesting supplemental briefs on the issue of attorney's fees and declaratory relief, the district court denied Appellant's motion for declaratory relief in its October 1, 2012 order (the "October 1, 2012 Order"), for two reasons. First, the district court concluded that Appellant neither requested declaratory relief nor referenced the statutory source for that relief in her complaint. In support of this conclusion, the district court cited one unpublished case from the Middle District of Florida, and Wright & Miller's Federal Practice & Procedure.[4] Second, the district court ruled that "in any event" it would deny Appellant's motion for declaratory relief, explaining,

---

[4] See 4 C. Wright & A. Miller, Federal Practice & Procedure §§ 1238, 1256 (3d ed. 1998) ("[I]t is necessary for the plaintiff to . . . provide a short and plain statement of the claim on which relief may be granted, and include the demand for [declaratory] relief.").

7

> [a]lthough relief in the form of a declaratory judgment may be given pursuant to § 2000e-5(g)(2)(B) in the absence of an award of damages, such relief is available only when the plaintiff has succeeded in serving an important public purpose . . . Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074, 1080-81 (10th Cir. 1998) . . . . [Appellant] has not been in the [Appellees'] employment since 2005 [and therefore] a declaratory judgment would do little more than simply affirm the jury's verdict. [Marsal v. East Carolina University, No. 4:09-cv-126-fl, 2012 WL 3283435, at *9 (E.D.N.C. Aug. 8, 2012)].

October 1, 2012 Order, 2012 WL 4511173, at *3 (internal quotation marks omitted).

Based on its application of the factors set forth in Mercer v. Duke University, 401 F.3d 199, 204-09 (4th Cir. 2005), in the October 1, 2012 Order the district court also declined to award attorney's fees, reasoning, (1) while Appellant's "primary goal was an award of damages . . . the jury awarded no damages," which indicated her "victory [was] in fact purely technical"; (2) Appellant's case was not "legally significant to the law of gender discrimination"; and (3) Appellant's rejection of several reasonable settlement offers, coupled with the fact her case would have a minimal impact "on the development of the law and on society," showed the litigation lacked a public purpose and only served to vindicate Appellant's own rights. October 1, 2012 Order, 2012 WL 4511173, at *4-7.

8

On October 19, 2012, three years and 35 days after Judge Reidinger was assigned to this case -- but only 18 days after he denied Appellant's motion for declaratory relief and attorney's fees -- Appellant filed a motion demanding Judge Reidinger recuse himself ("Motion to Recuse"). Before Judge Reidinger ruled on Appellant's Motion to Recuse, Appellant filed her Third Notice of Appeal on October 31, 2012, claiming the district court abused its discretion when it denied her motion for declaratory relief and attorney's fees in the October 1, 2012 Order. Then, on November 21, 2012, Appellant filed a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) to vacate Judge Reidinger's orders, particularly the October 1, 2012, Order because he "entered [these] orders while disqualified pursuant to 28 U.S.C. section 455(b)" (the "First Motion to Vacate"). J.A. 233. Appellant also filed a supplemental motion to vacate on November 21, 2012, claiming for the first time that Appellees disclosed confidential information obtained during settlement mediation proceedings in violation of Rule 33 of the Fourth Circuit Rules of Procedure, and the district court improperly relied on this information in its October 1, 2012 Order (the "Supplemental Motion to Vacate"). See id. at 264-65.

The district court denied the Motion to Recuse, the First Motion to Vacate, and the Supplemental Motion to Vacate in

9

an order dated February 13, 2013 ("February 13, 2013 Order"). Subsequently, Appellant filed her Amended Third Notice of Appeal to challenge the February 13, 2013 Order.

In the instant appeal, Appellant asks us to address the assignments of error listed in both the Third Notice of Appeal and Amended Third Notice of Appeal, which claim the district court abused its discretion when it denied each of her post-trial motions in its October 1, 2012 and February 13, 2013 Orders.

## II.

### A.

#### February 13, 2013 Order; Motion to Recuse, First Motion to Vacate and Supplemental Motion to Vacate

As a court of limited jurisdiction, we must determine whether we possess jurisdiction to consider any of Appellant's arguments. See United States v. Hadden, 475 F.3d 652, 659 (4th Cir. 2007); Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . even [if] the parties are prepared to concede it." (internal quotation marks omitted)). Therefore, we first address Appellant's claim that the district court abused its discretion when it denied her Motion to Recuse, First Motion to Vacate, and Supplemental Motion to Vacate in the February 13, 2013 Order.

10

A notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). Ordinarily, a notice of appeal can only secure appellate review of specific orders that (1) have already been entered or announced at the time of the notice; and (2) are listed in the notice of appeal. See Fed. R. App. P. 3(c)(1)(B), 4(a)(2). If the party files a premature notice of appeal, subsequent orders must be appealed in accordance with the Rules of Appellate Procedure. See Nolan v. U.S. Dep't of Justice, 973 F.2d 843, 846 (10th Cir. 1992). "The effect of a notice of appeal is determined at the time it is filed." Trinidad Corp. v. Maru, 781 F.2d 1360, 1362 (9th Cir. 1986). A party may only amend its notice of appeal to include (1) any order entered by the district court within 30 days of the order prompting the original notice of appeal; or (2) an order denying a specific motion listed in Rule 4(a)(4)(A), the filing of which tolls the appeals period, within 30 days of an order disposing of that motion. See Fed. R. App. P. 4(a)(4)(A), (B)(ii).

A motion pursuant to Federal Rule of Civil Procedure 60(b)(6) tolls the appeals period if the motion "is filed no later than 28 days after the judgment is entered." Fed. R. App. P. 4(a)(4)(A)(vi). If a party fails to file a 60(b) motion in the trial court within 28 days of the order meriting such

11

relief, the appeals period is not tolled, and the appeal must be dismissed as untimely as to the underlying order. See id.; see also Shields v. Ill. Dep't of Corrections, 746 F.3d 782, 799 (7th Cir. 2014) (dismissing Appellant's appeal for lack of jurisdiction because he "filed his Rule 60 motion 30 days after the district court entered its final judgment"); Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 124 (2d Cir. 2011) (ruling the court "lacks appellate jurisdiction" over an order denying Appellant's Rule 60(b) motion because he filed the original motion "three days after the twenty-eight day tolling deadline expired").

1.

We cannot review the February 13, 2013 Order insofar as it denied Appellant's Motion to Recuse. Appellant originally filed her Third Notice of Appeal to contest the October 1, 2012 Order on October 31, 2012. She then attempted to amend her Third Notice of Appeal to add the February 13, 2013 Order. However, because the district court entered the February 13, 2013 Order more than 30 days after the October 1, 2012 Order, Appellant could not amend her original notice to include the denial of her Motion to Recuse, but was instead required to file a separate notice of appeal. See Fed. R. App. P. 3(a)(1-2), 4(a)(1)(A). This she failed to do. And, Appellant's Motion to Recuse pursuant to 28 U.S.C. § 455(b)(2) cannot be saved by

12

tolling because it is not a motion listed in Rule 4(a)(4)(A), for which the appeals period may be tolled. Therefore, we lack jurisdiction to consider the district court's denial of the Motion to Vacate.

We also cannot address Appellant's arguments regarding the First Motion to Vacate, because it is inseparably intertwined with Appellant's Motion to Recuse. We cannot consider whether the district court abused its discretion when it denied the First Motion to Vacate without, at the same time, considering whether Judge Reidinger should have recused himself. We also lack jurisdiction over this issue because Appellant's First Motion to Vacate was untimely as to the underlying Order. This is because Appellant filed her first 60(b)(6) motion <u>42 days</u> after the October 1, 2012 Order, and she did not file a separate notice of appeal regarding the issues complained of in her First Motion to Vacate.

2.

Likewise, we lack jurisdiction to consider whether the district court erred when it denied Appellant's Supplemental Motion to Vacate because this motion was not timely filed. Appellant filed her Supplemental Motion to Vacate <u>112 days</u> after the district court entered the October 1, 2012 Order, which allegedly contained confidential information. Therefore, her

13

attempt to amend her Third Notice of Appeal to challenge the February 13, 2013 Order was ineffective.

Compliance with the Rules of Appellate Procedure is "mandatory and jurisdictional," Browder v. Director, Department of Corrections of Illinois, 434 U.S. 257, 264 (1978) (internal quotation marks omitted), and Appellant has clearly failed to follow them. Accordingly, we lack jurisdiction to consider Appellant's arguments relating to the February 13, 2013 Order.

B.

October 12, 2012 Order; Motion for Declaratory Relief

We review decisions to grant or deny declaratory relief for an abuse of discretion. See Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995).

Appellant offers two reasons why the district court abused its discretion when it denied her motion for declaratory relief. First, she posits that Rule 54(c) of the Federal Rules of Civil Procedure permits a district court to award any relief to which the prevailing party may be entitled, regardless of whether the relief was requested in the complaint. Second, she argues that the declaratory relief she sought would serve a public purpose, and would do more than simply restate the jury verdict.

We hold that the district court was required to entertain whether to award Appellant declaratory relief even if

14

Appellant did not request this relief in her complaint or make any factual or legal argument in support of a declaratory judgment. We also hold the district court relied upon an incorrect legal standard to guide its discretion when it decided whether to award Appellant's requested declaration. Nonetheless, applying the correct standard to this case, we affirm the district court's denial of declaratory relief.

Title VII prevents employers from discriminating against "any individual because of race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiffs may prevail if they demonstrate that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). However, if the employer demonstrates it "would have taken the same action in the absence of the impermissible motivating factor," Title VII restricts the plaintiff's remedies; "the court . . . may grant declaratory relief . . . and attorney's fees and costs," but "shall not award damages." 42 U.S.C. § 2000e-5(g)(2)(B) (emphasis supplied). By including the word "may" in this subsection, Congress left the decision of whether to award declaratory relief to the discretion of the trial judge. See Sheppard v. Riverview Nursing Ctr., Inc., 88 F.3d 1332, 1335 (4th Cir. 1996) (holding that the term "may" in § 2000e-

15

5(g)(2)(B) "make[s] evident" that the relief it provides "is discretionary rather than mandatory"). The Court has interpreted § 2000e-5(g)(2)(B) as creating a "limited affirmative defense" that narrows the scope of a plaintiff's remedies. Desert Palace, 539 U.S. 90, 94 (2003) (internal quotation marks omitted). Additionally, "because a case generally does not become a mixed-motive or pretext case until after the evidence is developed . . . plaintiffs ordinarily will not know whether their claim implicates § 2000e-5(g)(2)(B) at the time of filing suit." Sheppard, 88 F.3d at 1336.

1.

Rule 54(c) of the Federal Rules of Civil Procedure directs trial courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). We have held that district courts have a "duty to grant whatever relief is appropriate in the case on the basis of the facts proved" even if the party has not demanded that relief in its pleadings, and "[t]he pleadings serve only as a rough guide to the nature of the case." Robinson v. Lorillard Corp., 444 F.2d 791, 803 (4th Cir. 1971); see Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 901 (4th Cir. 1996) ("Rule 54(c) . . . commands that the trial court shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not

16

demanded such relief in the party's pleadings." (internal quotation marks omitted)); see also New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24-25 (4th Cir. 1963) ("Under the [F.R.C.P.] . . . a plaintiff in his complaint is required only to set forth a short and plain statement of the claim. He need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it upon any theory." (internal quotations omitted)). However, "[a] party will not be given relief not specified in its complaint where the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief." Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 716 (4th Cir. 1983) (internal quotation marks omitted).

In the context of Title VII, if a plaintiff prevails on their 42 U.S.C. § 2000e-2(m) claim but is restricted in their remedy to a declaration, injunction, or award of attorney's fees, as was Appellant in this case, we recognize that the jury made all factual conclusions necessary for the court to award declaratory relief. Cf. Mercer, 401 F.3d at 207 ("The jury's verdict, of course, does represent a factual determination that Duke was legally responsible for violating Mercer's rights under Title IX."). Therefore, in that circumstance § 2000e-5(g)(2)(B) and Rule 54(c) together obligate the district court to

17

determine, in its discretion, if declaratory relief is an appropriate remedy, provided that doing so would not prejudice the defendant. See Atl. Purchasers, 705 F.2d at 716; cf. Mercer, 401 F.3d at 207.

In her complaint, Appellant claimed entitlement to relief pursuant to § 2000e-2(m). The jury rendered findings, pursuant to § 2000e-5(g)(2)(B), that Appellant's gender was a motivating factor in Appellees' employment action, but that Appellees would have taken the same action regardless. Appellant did not request declaratory relief in her complaint, raising the issue for the first time after trial.

This case is quite similar to Albemarle Paper Co. v. Moody, 422 U.S. 405 (1974), in which appellants brought their claim under § 2000e et seq and requested back pay, for the first time, in a post-trial motion. See id. at 410. The district court denied the motion in part because appellants had not requested back pay in their complaint. See id. The Court dismissed this reasoning, citing Rule 54(c). See id. at 424 (noting, "[i]t is true that Title VII contains no legal bar to raising back pay claims after the complaint . . . has been filed, or indeed after a trial on that complaint has been had," and Rule 54(c) requires district courts to grant all relief to which a plaintiff is entitled, absent substantial prejudice).

In this case, Appellant filed her original motion for declaratory relief on August 7, 2009. By virtue of the district court's order permitting the parties to supplement their filings on this issue, Appellees had over a year and a half to consider their response to Appellant's motion. As a result, we conclude there was no prejudice to Appellees, even despite Appellant's failure to formally request declaratory relief until after trial. Therefore, the district court erred when it denied Appellant declaratory relief based on the fact that Appellant failed to specifically request such relief prior to trial or to make any legal or factual argument in favor of a declaratory judgment.

2.

While § 2000e-5(g)(2)(B)(i) places the power to award declaratory relief in the district courts' discretion, "such discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." Albermarle Paper Co., 422 U.S. at 416 (internal quotation marks omitted). "We have . . . enumerated several factors to guide district courts in their exercise of this discretion." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421-22 (4th Cir. 1998) (per curiam) (internal quotation marks omitted).

19

In Aetna, we held that, when deciding whether to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201,[5] a district court should consider several factors. See Aetna, 139 F.3d at 422-24. Among those factors relevant to this case are whether awarding declaratory relief (1) will clarify important issues of law in which the forum state has an interest; (2) will "clarify the legal relations between the parties" or afford "relief from uncertainty, insecurity, and controversy giving rise to the proceeding"; and (3) "whether the declaratory judgment action is being used merely as a device for procedural fencing."[6]  Id. (internal quotation marks omitted); see also Am. Cas. Co. of Reading, Pa. v. Howard, 173 F.2d 924, 927 (4th Cir. 1949) ("We think [judicial discretion whether to grant declaratory relief] should be liberally exercised to effectuate the purposes of the [Declaratory Judgment Act] and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations."); see also Edwin Bouchard, Declaratory Judgments 299 (2d ed. 1941) ("The

---

[5] "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201 (emphasis supplied).

[6] Fencing includes "provid[ing] another forum in a race for res judicata[,] . . . achiev[ing] a federal hearing in a case otherwise not removable," and "forum shopping."  Aetna, 139 F.3d at 422, 424 (internal quotations omitted).

20

two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying . . . the legal relations at issue and (2) when it will . . . afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.").

Citing a Tenth Circuit opinion, the district court refused to grant Appellant the declaratory relief she requested, reasoning that declaratory relief pursuant to § 2000e-5(g)(2)(B) "is available only when the plaintiff has succeeded in serving an important public purpose." October 1, 2012 Order, 2012 WL 4511173, at *3 (J.A. 162-63) (citing Gudenkauf v. Stauffer Commc'ns, Inc., 158 F.3d 1074, 1080-81 (10th Cir. 1998)). The district court reasoned that, because "the Plaintiff has not been in the Defendants' employment since 2005, a declaratory judgment would 'do[] little more than simply affirm the jury's verdict.'" Id. at *3. However, these conclusions flow from inapplicable legal standards.

The district court's reliance on authority from the Tenth Circuit was misplaced. The Gudenkauf case did not address whether and when a district court should order declaratory relief -- in fact, it does not discuss declaratory relief; instead, that case was focused on the issue of when it is appropriate to award attorney's fees. Gudenkauf, 158 F.3d at 1080 ("Justice O'Connor's concurring opinion in Farrar

21

recognizes that recovery [of attorney's fees] may be had even where actual damages are minimal or nonexistent if plaintiff succeeds in serving an important public purpose."). It is well-established law that whether a lawsuit in toto serves "important public purpose" is only relevant to a district courts' determination of whether to award <u>attorney's fees</u> via § 2000e-5(g)(2)(B)(i).[7] <u>See</u> <u>Sheppard</u>, 88 F.3d at 1336 (district courts should consider "whether the public purposes served by resolving the dispute justifies the recovery of fees." (citing <u>Farrar v. Hobby</u>, 506 U.S. 103, 121-22 (1992) (O'Connor, J., concurring)); <u>see also</u> <u>Mercer</u>, 401 F.3d at 204 ("[W]hen determining whether attorney's fees are warranted in a nominal-damages case, courts should consider 'the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served' by the litigation." (quoting <u>Farrar</u>, 506 U.S. 103 at 122 (O'Connor, J., concurring)). Whether the declaratory relief requested restates the verdict is primarily relevant to the district courts' determination of whether to award attorney's fees, and is not directly related to the question of

---

[7] <u>Gudenkauf</u> also expressly "disagree[d] . . . with the Fourth Circuit Court of Appeals . . . that <u>Farrar</u> should be applied in a mixed motive case to deny all but a nominal fee recovery simply because a mixed motive plaintiff does not recover money damages . . . . <u>See</u> <u>Sheppard v. Riverview Nursing Center, Inc.</u>, 88 F.3d 1332 (4th [Cir. 1996])." <u>Gudenkauf</u>, 158 F.3d at 1080.

whether an award of declaratory relief is warranted. See Sheppard, 88 F.3d at 1336-38 (discussing the extent of declaratory relief sought as a factor in the decision of whether to award attorney's fees).

Instead, the Aetna factors serve as a useful guide for situations, such as this, where the district court is tasked with making a discretionary determination of whether it is appropriate to award declaratory relief pursuant to § 2000e-5(g)(2)(B)(i). We are aware that the district courts' assessment of whether to award declaratory relief in a particular case must be "measured against the purposes which inform Title VII," namely "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group . . . over other employees." Albemarle Paper Co., 422 U.S. at 417. We are also mindful that we "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 393 (2008). Indeed, the Aetna factors are consistent with the purposes of Title VII and are more likely to generate consistent outcomes than the "important public purpose" standard employed by the district court.

Applying the Aetna factors to the case now before us, we conclude they weigh against a declaratory judgment. First,

23

the declaratory relief Appellant sought would do nothing to clarify any issue of law in which the forum state, or indeed the federal government, has an interest. While Appellant sought a declaration that effectively restates the verdict -- a fact which, in and of itself, is not determinative to our analysis -- we recognize the verdict itself in this case did not represent a significant development in Title VII such that the law requires clarification. For example, this is not a case such as <u>Mercer</u> where the jury's verdict represented an evolution in the law. <u>See, e.g.</u>, <u>Mercer</u>, 401 F.3d at 206-07.

Second, the declaration Appellant requested would not clarify the post-trial legal rights of the parties and would not resolve any uncertainties. In <u>Sheppard</u>, the plaintiff prevailed on her § 2000e-2(m) gender discrimination claim, but pursuant to § 2000e-5(g)(2)(B) the jury entered findings that defendant would have made the same employment decision not withstanding her gender. There, the district court entered a declaration as follows:

> [T]he Court hereby declares that the plaintiff underwent an unlawful employment practice, in that her sex (pregnancy status) was a motivating factor in her layoff on 4/13/92 but that other factors also motivated that layoff and that this judgment constitutes the whole of the relief to which the plaintiff is entitled, except for costs (including attorney's fees) as therein set forth.

24

Order and J., <u>Sheppard v. Riverview Nursing Ctr., Inc.</u>, No. 1:93-cv-02663 (D. Md. Sept. 13, 1993; filed Nov. 4, 1994), ECF No. 36. This declaration was useful for clarifying the legal rights of the parties in that case because it explained the effect of the mixed-motive verdict upon the scope of remedies available to the plaintiff. Here, the declaration Appellant requested –– "that defendant's failure to promote her to the position of Interim Director of the Agency was motivated by her gender in violation of Title VII" –– would not have a similar effect. J.A. 22. Such a declaration would not resolve any outstanding uncertainties, but would simply reiterate the jury's verdict that Appellees are liable for violating Title VII. We are satisfied, based on our analysis of the <u>Aetna</u> factors, that the district court did not err when it denied Appellant's motion for declaratory relief.[8]

C.

<u>October 1, 2012 Order; Motion for Attorney's Fees</u>

"[W]e review the district court's [determinations on] attorneys' fees under the abuse of discretion standard." <u>Lefemine v. Wideman</u>, 758 F.3d 551, 554 (4th Cir. 2014). Awarding attorney's fees through 42 U.S.C. § 2000e-5(g)(2)(B) is obviously not appropriate when a plaintiff loses its case. But

_____

[8] The third factor –– concern as to procedural fencing –– is not applicable to this case.

25

they are similarly inappropriate "when the plaintiff's success is purely technical or de minimis." Farrar, 506 U.S. at 117 (1992) (O'Connor, J., concurring). In such a case, "no fees can be awarded" because the "plaintiff either has failed to achieve victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero." Id.; see also Mercer, 401 F.3d at 203 (extending this rationale to Title IX cases); Sheppard, 88 F.3d at 1336, 1339 (extending this rationale to Title VII cases). Therefore, when the judgment lacks significant damages recovery, and yet the plaintiff seeks attorney's fees, courts must consider the following factors: (1) the extent of relief sought compared to the relief obtained; (2) the significance of the legal issues on which the plaintiff prevailed; and (3) whether the litigation served a public purpose. See Farrar, 506 U.S. at 122 (O'Connor, J., concurring); Mercer, 401 F.3d at 204; Sheppard, 88 F.3d at 1335-36.

1.

We take into account the extent of the recovery because "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Farrar, 506 U.S. at 121; see also Mercer, 401 F.3d at 205 (applying Farrar to Title IX cases). Courts must first identify the "relief sought." In doing so, we are required to determine the objective "purpose" of the lawsuit.

26

*Mercer*, 401 F.3d at 204-06. If the rule were otherwise, plaintiffs that only receive nominal damages (or no damages) would seek attorney's fees on the basis that the only relief they actually wanted was a liability finding or a declaratory judgment. *See* *id.* at 206. If the plaintiff only seeks monetary damages, the purpose of the lawsuit is likely to obtain monetary damages, and the appropriate comparison is between the amount of damages sought and the measure of damages awarded. "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar*, 506 U.S. at 114 (internal quotation marks omitted).

2.

When determining whether to award attorney's fees, we also measure the legal import of the civil rights claim on which the plaintiff prevailed. *Farrar*, 506 U.S. at 122; *Mercer*, 401 F.3d at 206. We have interpreted this factor to require more than a simple victory on a civil rights claim or a jury verdict stating the defendant engaged in unlawful discrimination. *See* *Mercer*, 401 F.3d at 206-07 (noting "the issue on which Mercer prevailed is an important one"). For this factor to weigh heavily in the courts' determination of whether to enter a fee award, the case should be significant to the body of civil rights law because it is novel, establishes important precedent, or otherwise advances the law. *See* *id.* at 207. For example, in

27

*Mercer*, we found it persuasive that the verdict "gave rise to a first-of-its-kind liability determination," namely that Title IX's contact-sports exemption does not permit collegiate sports teams to discriminate against women who already play contact sports. *Id.*

3.

And finally, we consider "whether the public purposes served by resolving the dispute justifies the recovery of fees." *Mercer*, 401 F.3d at 207 (internal quotation marks omitted). "[S]uccess might be considered [worthy of fees] if it also accomplish[es] some public goal . . . ." *Sheppard*, 88 F.3d at 1336 (internal quotation marks committed). "Typical civil rights cases" that only serve to vindicate the plaintiff's rights and have no far-reaching effect are generally not worthy of attorney's fees. *Mercer*, 401 F.3d at 210; *accord* *Pino v. Locascio*, 101 F.3d 235, 239 (2d Cir. 1996) ("The vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief."). Lastly, "refusing a reasonable offer of settlement promotes few public interests when the plaintiff ultimately receives a less favorable recovery after trial" and "courts may consider a plaintiff's refusal of a settlement offer as one of several

28

proportionality factors guiding their exercise of discretion under § 2000e-5(g)(2)(B)."  Sheppard, 88 F.3d at 1337.

This third factor is sometimes discussed in connection with the second because both share a common core -- a civil rights plaintiff's case must be somewhat extraordinary to justify an award of attorney's fees if the jury awarded no or only nominal damages and the plaintiff failed to request other relief or obtained none.  See Mercer, 401 F.3d at 207-12 (noting plaintiff's failure to request declaratory relief having impact beyond her case or to obtain monetary damages did not prevent court from awarding attorney's fees, because her case "marked a milestone in the development of the law under Title IX").

4.

We are satisfied the district court did not abuse its discretion when it denied Appellant's motion for attorney's fees because its decision was supported by the Mercer factors. First, while it is obvious from the record that the purpose of Appellant's lawsuit was to recover money damages, she received none.  Appellant did not formally request declaratory relief -- and in fact did not mention declaratory relief at all -- until after the jury's verdict.[9]  Thus, Appellant's victory was merely

---

[9]  Appellant's counsel emphasized damages in his closing argument:

(Continued)

technical.  Second, with regard to the legal significance of the issues upon which Appellant prevailed, the district court noted, "to the extent that Plaintiff may claim success, it was not material to the public good," and "this factor does not weigh in favor of attorney's fees."  October 1, 2012 Order, 2012 WL 4511173, at *5-6 (J.A. 168).  The core of Appellant's case had little to no precedential value to the body of Title VII case law.  And third, the district court found "the only goal [of Appellant's case] was personal to the Plaintiff and to her attorney's desire for an award of counsel fees," and, therefore, she failed to "accomplish some public goal other than occupying the time and energy of counsel, court, and client."  Id.

The district court did not abuse its discretion when it denied Appellant's motion for attorney's fees.  Appellant

---

> Another issue you'll be asked to address is: What amount of compensatory damages, if any, do you find Melanie Pitrolo should recover? And then there's a whole list of instructions that you look at. . . . [The list] talks about emotional distress; it talks about sort of loss of career path; it talks about pecuniary damages. . . . If you think she's entitled to any compensatory damages, then you would write a number in there.

Tr. of Trial Proceedings Vol. 3 at 557, Pitrolo, 2009 WL 2600906 (W.D.N.C. June 22, 2006; filed Dec. 23, 2009), ECF No. 103.

30

obtained none of the relief she sought in her complaint, and her case was neither legally significant nor did it serve a public purpose.

III.

For the foregoing reasons, we dismiss for lack of jurisdiction the assignments of error regarding Appellant's Motion to Recuse, First Motion to Vacate, and Supplemental Motion to Vacate. We affirm the district court's denial of Appellant's motion for declaratory relief and attorney's fees.

DISMISSED IN PART<br>AND AFFIRMED IN PART